UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARK BECKNER, et al.,

Plaintiffs,

v.

COUNTY OF SANTA CRUZ, et al.,

Defendants.

Case No. 23-cv-05032-NW

**ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT; ORDER DENYING MOTIONS TO EXCLUDE TESTIMONY**

Re: ECF Nos. 120, 121, 124, 130, 132

Approximately 30 hours after Mark Beckner was booked into the Santa Cruz County Jail, he was found dead in his cell. Mr. Beckner's son, Brandon Beckner, and his estate ("Plaintiffs") filed suit asserting that the County of Santa Clara, correctional officers, and jail personnel were deliberately indifferent to Mr. Beckner's serious medical needs in violation of federal and state law.

The parties have now moved for summary judgment and to exclude expert testimony. Specifically this Order addresses: (1) Plaintiffs' motion for partial summary judgment ("Plaintiffs' MSJ"), ECF No. 124; (2) County of Santa Cruz, Sheriff James Hart, Correction Officer Joshua Johnson, and Correction Officer Robert Buchannon's (collectively the "County Defendants") motion for summary judgment ("County Defendants' MSJ"), ECF No. 132; (3) Defendants California Forensic Medical Group ("CFMG"), and its employee Sarah Hewett's (collectively, the "CFMG Defendants")[1] motion for summary judgment by ("CFMG Defendants' MSJ"), ECF No. 130; (4) Plaintiffs' motion to exclude the testimony of Patrick Ennis, M.D., ECF No. 120; and (5)

---

[1] Plaintiffs additionally brought claims against Wellpath, Inc., Wellpath, LCC, and Wellpath Management, Inc. *See* SAC ¶¶ 22-23. A discharge order was issued as to these Defendants in bankruptcy proceedings on June 4, 2025. *See* ECF No. 83.

CFMG Defendants' motion to exclude the testimony of Jeffrey Keller, M.D., ECF No. 121. [2]

The Court heard oral argument on March 19, 2026. As the Court ruled on the record and explains further below, the Court DENIES Plaintiffs' motion for partial summary judgment, DENIES County Defendants' motion for summary judgment, and DENIES CFMG Defendants' motion for summary judgment. Additionally, the Court DENIES both motions to exclude expert testimony.

## I.  BACKGROUND[3]

Mr. Beckner was 57 years old and living in Santa Cruz County at the time of his death. Mr. Beckner was addicted to opioids.

Late in the evening on October 30, 2022, Mr. Beckner was arrested on a charge of receiving stolen property. He was booked in the Santa Cruz County Jail in the early hours of October 31, 2022.

The Santa Cruz County Jail is owned and operated by the County of Santa Cruz and staffed by the County Sheriff's deputies and other correctional staff. The County contracts with CFMG to provide medical services to incarcerated inmates at County facilities. CFMG employs medical professionals who work within the detention facilities, including the nursing staff who interacted with Mr. Beckner.

Shortly after being booked, in the early morning of October 31, 2022, Mr. Beckner informed jail staff that he suffered from opioid addiction, had recently used fentanyl and methamphetamines, and would be experiencing withdrawal. Mr. Beckner was placed in a cell in the A Unit of the jail.

Just over 28 hours later, at approximately 5:30 a.m. on November 1, 2022, a nurse

---

[2] The parties filed two additional motions to exclude testimony. ECF Nos. 122, 123. During the hearing, the parties indicated that they may be able to resolve the motions by stipulation. The Court ordered the parties to meet and confer, and if able to resolve the motions, to file a stipulation by April 2, 2026. If the parties are not able to resolve the motions by stipulation, they must update the Court by the same deadline, and the Court will issue a separate order ruling on the motions. The Court additionally ordered the parties to file a stipulation regarding Plaintiffs' dismissal of their claim for failure to supervise against Defendant Hewett.

[3] The background facts are undisputed and drawn from the parties' motions for summary judgment and accompanying exhibits.

United States District Court
Northern District of California

conducting a medicine check noticed that Mr. Beckner looked unwell, and called for support from Defendant Sarah Hewett, a nurse and Health Services Administrator for CFMG.  Corrections officers transferred Mr. Beckner from the A Unit to a holding cell in the booking area.  On November 1, 2022, at approximately 7:45 a.m., Mr. Beckner was found dead in the holding cell.

It is undisputed that Mr. Beckner never saw a doctor (or medical provider other than the two nurses) and that he was never sent to the hospital.  It is also undisputed that Mr. Beckner's autopsy indicated that he likely suffered an aneurysm that caused a fatal retroperitoneal hematoma. But what transpired in the approximately 30 hours between Mr. Beckner being booked into the jail, and when he was found dead on November 1, is disputed.

## II.    MOTIONS FOR SUMMARY JUDGMENT

Plaintiffs' complaint asserts six claims: (1) violation of due process by deliberate indifference to serious medical need (42 U.S.C. §1983); (2) failure to supervise (42 U.S.C. §1983); (3) failure to prevent violations of the law by employees, failure to train, failure to discipline, and ratification (42 U.S.C. §1983); (4) *Monell* policy, pattern and practice (42 U.S.C. §1983); (5) wrongful death (California Civ. Code §377.60, *et seq.*); and (6) under the Bane Act (California Civ. Code §52.1(b)).  Plaintiffs move for partial summary judgment on their claim for violation of due process rights and on their *Monell* claim.  County Defendants and CFMG Defendants both move for complete summary judgment.

### A.    Legal Standard

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the evidence in the light most favorable to the non-movant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).  A genuine issue of material fact exists if there is sufficient evidence such that a reasonable jury could return a verdict for the non-moving party.  *Id*. at 248.  The Court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact.  *See id*. at 249.

United States District Court
Northern District of California

To defeat summary judgment once the moving party has met its burden, the nonmoving party may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that a genuine issue of material fact exists. *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In other words, there must exist more than "a scintilla of evidence" to support the non-moving party's claims, and conclusory assertions will not suffice. *See Anderson*, 477 U.S. at 252; *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

Similarly, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts" when ruling on the motion. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Where, as here, the parties have filed cross-motions for summary judgment, "[e]ach motion must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id*.

### B.    Discussion

Each party's motion for summary judgment turns on what took place between the late evening of October 30, 2022, and early morning of November 1, 2022, for which there are "genuine dispute[s]" of material fact. *Anderson*, 477 U.S. at 255. For example, the parties have submitted multiple medical records, deposition testimony, video footage of Mr. Beckner's cell and the jail, and expert reports, among other forms of evidence. The parties put forth contrasting "facts" regarding: what Mr. Beckner told medical staff when he was booked; when Mr. Beckner's symptoms began; how many times and when various Defendants checked on Mr. Beckner in his cell; which nurses knew of Mr. Beckner's symptoms and when; whether jail supervisors were aware of Mr. Beckner's symptoms and declining condition; whether medical checks were recorded; if other inmates alerted jail staff about Mr. Beckner's conditions; if or when a doctor was consulted; what other options were reasonably available for Mr. Beckner's care; whether Mr. Beckner "had to be dragged out" of his cell for medical checks or if he walked on his own; whether Mr. Beckner was awake, alert, and able to answer questions when nurse Hewett arrived in

United States District Court
Northern District of California

his cell; and which corrections officers assisted nurses Hewett and Choi with addressing Mr. Beckner's declining condition during the morning of November 1. These factual disputes inform the analysis of what appropriate level of medical care Mr. Becker needed, whether or when Mr. Beckner should have been transported to the hospital, and what a reasonable medical provider or correctional officer would have done in the circumstances. Weighing this evidence is squarely in the province of the jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Ellis v. Union Pac. R. Co.*, 329 U.S. 649, 653 (1947) ("[T]he decision as to which witness was telling the truth, the inferences to be drawn from uncontroverted as well as controverted facts, are questions for the jury.").

Each of Plaintiffs' claims requires resolution of these disputes of material fact. *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (for the deliberate indifference to serious medical need claim, there is a dispute of material fact about the existence of "a serious medical need" such that "defendant's response to the need was deliberately indifferent"); *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011) (for the failure to supervise and failure to prevent violations of law claims, there is a dispute of material fact that defendants' actions related to the plaintiff were "pursuant to official municipal policy" and "caused [his] injury"); *Id.* at 61-62 (similarly, for the *Monell* claim, it is for the jury to decide how to weigh the various examples submitted by Plaintiffs of other people who died while incarcerated in the Santa Cruz County Jail to see if those examples establish a "policy or custom"); *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1264 (2006) (for a wrongful death claim, a jury must decide whether there is a dispute of material fact as to whether defendants acted negligently and whether there is a causal link between those negligent actions and the decedent's death); and *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998) (as to the Bane Act claim, the finder of fact must determine whether defendants interfered with the plaintiff's rights to medical care).

Here the individual County Defendants (Hart, Buchanan, and Johnson) argue that they are entitled to qualified immunity because their conduct did not violate Mr. Beckner's constitutional rights and clearly established law. County Defendants' MSJ at 22. To defeat a defense of qualified immunity, Plaintiffs must show that (1) the officers' conduct violated a constitutional

right, and (2) that right was "clearly established" at the time. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). As discussed above, there is a dispute of fact as to whether the individual County Defendants violated a constitutional right of Mr. Beckner. As to the second question, the individual County Defendants ask the Court to parse Mr. Beckner's medical circumstances, arguing that his rights were not "clearly established" because "[t]his case presents a novel situation, as medical professionals, much less, a layperson would not recognize from observing Decedent that he [had] a medical condition other than withdrawal." County Defendants' MSJ at 24. However, even this argument is grounded on disputed material facts. While it is undisputed that the autopsy report states that Mr. Beckner died of an aneurysm, it *is* disputed whether Mr. Beckner's withdrawal and other medical conditions contributed to his aneurysm, whether an officer would be expected to recognize the need for medical care under these circumstances, and whether the individual officers involved in this case were trained to assess deficiencies in medical personnel's treatment. These factual disputes preclude a finding of qualified immunity. "If a genuine issue of material fact exists that prevents a determination of qualified immunity at summary judgment, the case must proceed to trial." *Porter v. Osborn*, 546 F.3d 1131, 1136 (9th Cir. 2008) (citation omitted).

The Court finds that sufficient evidence favors each party as a non-movant such that a reasonable jury could return a verdict in either party's favor. *Anderson*, 477 U.S. 248. The Court accordingly DENIES each party's motion for summary judgment.

## III.    MOTIONS TO EXCLUDE TESTIMONY

Plaintiffs move to exclude the testimony of Patrick Ennis, M.D., who is one of CFMG Defendants' expert witnesses. ECF No. 120. CFMG Defendants move to exclude the testimony of Jeffrey Keller, M.D., one of Plaintiffs' expert witnesses. ECF No. 121. For the following reasons, the Court DENIES both motions to exclude.

### A.    Legal Standard

Under Rule 702 of the Federal Rules of Evidence, a witness may offer expert testimony if the following requirements are met:

(a) the expert's scientific, technical, or other specialized knowledge

United States District Court
Northern District of California

6

will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

F.R.E. 702.

Expert testimony is admissible under Rule 702 if the court finds by a preponderance of the evidence that the expert is qualified and the testimony is both relevant and reliable. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004). Rule 702 "contemplates a broad conception of expert qualifications." *Hangarter*, 373 F.3d at 1015. "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010)). "An expert's specialized knowledge and experience can serve as the requisite 'facts or data' on which they render an opinion." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022).

### B. Discussion

#### 1. Testimony of CFMG Defendants' Expert Patrick Ennis, M.D.

Dr. Ennis is a general physician and withdrawal specialist working in the field of corrections in Chicago, Illinois. CFMG Defendants designated Dr. Ennis "to provide expert testimony on the standard of care and actions and inactions of CFMG staff during Mr. Beckner's medical care at the Santa Cruz County Jail." ECF No. 131 at 4.

Plaintiffs argue that (1) Dr. Ennis lacks the requisite qualifications to testify to specific standards of care, likely course of treatment in an emergency room, and the likely outcome of those treatments, and (2) Dr. Ennis' opinions are not sufficiently reliable. The Court disagrees. First, Dr. Ennis is sufficiently qualified to testify to the proffered topics given his experience

United States District Court
Northern District of California

7

working "as an attending physician for the Department of Correctional Health Services/Cermak Health Services of Cook County in Chicago, Illinois since 2017" and as "the Medical Director of the Cermak Health Services of Cook County Opioid Treatment Program since March of 2022," where he "works with correctional nurses everyday." ECF No. 131 at 7-8. CFMG Defendants point out that Dr. Ennis' testimony concerning the likely course of treatment in an emergency room and the outcome of those treatments is offered only in rebuttal to Plaintiffs' expert Dr. Keller's testimony. The Court finds Dr. Ennis' education, training, credentials, and experience as a medical doctor in a correctional setting qualifies him as an expert to discuss standards of care and to rebut Dr. Keller's testimony. Second, Dr. Ennis' opinions are based upon sufficient facts and data given that Dr. Ennis conducted a blind review of the records in forming his opinion. Accordingly, the Court finds that his opinions are sufficiently reliable. Any remaining arguments implicate Dr. Ennis' credibility and weight of evidence, which are more appropriately determined by the jury.

### 2.    Testimony of Plaintiffs' Expert Jeffrey Keller, M.D.

Dr. Keller is an emergency medicine physician licensed to practice in Idaho. He has "experience providing direct clinical care to incarcerated patients and supervising medical programs in both jails and prisons." ECF No. 133 at 2. Plaintiffs designated Dr. Keller to testify to correctional medical systems and oversight, clinical correctional care, emergency department care services and procedures, and emergency transport.

CFMG Defendants do not challenge Dr. Keller's qualifications as a medical professional in a correctional setting. CFMG Defendants instead argue: (1) Dr. Keller's opinions that Mr. Beckner's death was preventable and that he suffered unnecessarily are speculative, contradict well-established scientific fact, and, as such, are unreliable and more prejudicial than probative; and (2) Dr. Keller's opinions that any actions or omissions by Defendant CFMG caused any harm to Mr. Beckner are speculative and are unsupported by sufficient facts. The Court disagrees with both arguments. Dr. Keller based his opinions on his personal experience as an emergency room physician and his personal experience treating ruptured arteries (though not splanchnic artery ruptures). This is a sufficiently reliable basis for his opinions. Further, Dr. Keller's opinions

United States District Court
Northern District of California

about Defendant CFMG's actions are based on the operative complaint, grand jury testimony submitted with the complaint, Mr. Beckner's medical chart, CFMG's "policies and nursing protocols," and the testimony of nurse Defendant Hewett, among other sources. Again, this is a sufficient factual basis for Dr. Keller's opinions in this case. The Court finds that Dr. Keller's opinions are sufficiently reliable when coupled with his experience and credentials.

***

These two experts are primarily being offered to rebut one another. Both are qualified physicians with adequate expertise to speak to their respective opinions. It is the province of the jury to weigh the credibility of each.

## IV.     CONCLUSION

The Court DENIES Plaintiffs' motion for partial summary judgment, DENIES the County Defendants' motion for summary judgment, and DENIES the CFMG Defendants' motion for summary judgment. The Court DENIES both motions to exclude expert testimony. The Court also dismisses without prejudice the unnamed Doe Defendants as Plaintiffs have been given adequate opportunity to obtain their identities and have not done so. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

**IT IS SO ORDERED.**

Dated: March 26, 2026

Noël Wise
United States District Judge

9